JOHN EMERICK, PLAINTIFF–RESPONDENT, v. TEANECK
BOARD OF EDUCATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 16, 1987—Decided December 9, 1987.

Before Judges DREIER and BAIME.

*Greenwood & Sayovitz,* attorneys for appellant (*Robert H. Greenwood,* on the brief).

*Bucceri & Pincus,* attorneys for respondent (*Sheldon H. Pincus,* of counsel; *T.J. Baldwin–LeClair,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant appeals from a decision of Judge Huot in the Chancery Division directing defendant Teaneck Board of Education (Board) to comply with a settlement agreement and pay plaintiff the full agreed amount of $38,350, without deduction for withholding taxes or social security payments. The court also ordered that defendant pay interest on this sum from December 31, 1985 until the date of payment.

The background of the parties' initial dispute is of little moment. It is sufficient to note that the Board served tenure charges on plaintiff in August 1985 alleging excessive absences. Plaintiff had contended that the absences were caused by a series of illnesses, accidents and operations during the course

of six school years. The Board, however, asserted that the absences demonstrated chronic absenteeism, incapacity to perform plaintiff's duties, and conduct unbecoming a teacher, all of which tended to disrupt the "educational process." The Board notified plaintiff that it would consider the charges at a public meeting after which it would determine whether to submit the matter to the Commissioner of Education for a hearing. Plaintiff's counsel then notified the Board that he would pursue counter-actions and counterclaims for

the torts of handicap discrimination, interference with prospective economic advantage, intentional infliction of emotional distress, malicious prosecution and/or abuse of process, and defamation of character and professional reputation.

Before any further action was taken, the parties entered into settlement discussions which culminated in a settlement agreement dated October 23, 1985, the purpose of which was stated to be "an amicable resolution of all anticipated litigation." The key portions of the agreement called for plaintiff's resignation as of December 31, 1985 with the continued employment of plaintiff until that date at his regular compensation. On December 31, 1985 plaintiff would receive the lump sum of $38,350 "as settlement in lieu of litigation," which sum would "not constitute salary or wages for pension credit or for any other purpose" and would be paid to plaintiff "in return for his relinquishment of all tenure and seniority rights ... and [plaintiff's] right to litigate same." The agreement further provided for mutual releases.

Plaintiff was paid his salary through December 31, 1985, but was then tendered a check for $20,489.97, representing the agreed lump sum of $38,350 with deductions for federal and state income tax and social security. Plaintiff refused to accept the check and returned it. Defendant then tendered a second check for $34,836.87, representing the agreed-upon lump sum minus deductions for social security only. This check also was returned, plaintiff claiming that the social security deduction was also improper. Defendant unilaterally reported to the

Internal Revenue Service that plaintiff had been paid the full sum of $38,350 and that this sum constituted wages for income tax purposes.

Plaintiff filed this action in the Chancery Division seeking an order to direct defendant to comply with the settlement agreement and pay the full amount of the lump sum without deductions. By way of answer, defendant claimed that federal law required the deductions and that the court lacked subject matter jurisdiction. Additionally, at oral argument in the Chancery Division defendant raised the further bar of 26 *U.S.C.A.* § 3403, claiming that it provided immunity from suit for employers who deduct and pay taxes. Judge Huot found for plaintiff, awarding him both the full amount of the agreed settlement plus interest from the date payment was to have been made.

Defendant raises five points on this appeal: first, defendant properly withheld the taxes; second, the trial court lacked jurisdiction to render a tax decision, and if it had jurisdiction, it abused its discretion in issuing the order; third, § 3403 of the Internal Revenue Code prohibits this suit; fourth, the court abused its discretion in directing the payment of interest; and fifth, summary judgment was inappropriate.

We determine that Judge Huot's substantive decision to require payment of the total settlement sum was correct. He further took the expedient step of conditioning payment upon plaintiff's agreement to indemnify defendant for any tax liability or penalties which might be imposed upon defendant by reason of this direct payment. From our reading of the federal tax law there was at least a bona fide question of whether there should have been a deduction for withholding tax and social security; but this question is not dispositive of the case. This is apparent when we focus upon the rights relinquished by plaintiff in consideration for the lump sum payment, namely both tenure rights and the tort claims noted earlier in the

nature of defamation, discrimination and interference with economic advantage, but not a recapture of lost salary.

The initial loss was of the tenure rights, which is a right to continued employment. The payment was not in lieu of a fixed payment due from the Board to plaintiff for any particular period, and plaintiff had the opportunity as of January 1, 1986 to work elsewhere, duplicate the payments he would have received from defendant, and in fact, achieve new tenure rights somewhere else. The distinction between payment for an intangible right as opposed to severance pay in lieu of wages or other fixed monetary benefits has been the subject of various Revenue Rulings interpreting an employer's duty to withhold a portion of an employee's pay for income tax and social security. Although the payment in question here was reportable by plaintiff as gross income, the challenge before us is not one to the reportability of the settlement as gross income,[1] but rather

---

[1] This issue must be distinguished from a determination of whether the payment is includable by the taxpayer in his gross income. 26 *U.S.C.A.* § 104(a)(2) excludes from gross income

the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness.

The corresponding federal regulation defines "damages" as

an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. [26 *C.F.R.* § 1.104–1(c)].

The lump-sum settlement of an employee's claims has generated well defined rules where an employer pays damages

as compensation for wrongful loss [where] there has been no economic gain or accession to wealth by the taxpayer, but merely a restoration to the position he occupied prior to the loss. He has been made whole, not enriched. [*United States v. Garber*, 589 F.2d 843, 847 (5th Cir.), rev'd on other grounds 607 F.2d 92 (5th Cir.1979)].

Where the employer's motive was to provide severance pay or to satisfy a contractual claim, the amount must be reported as gross income. *Knuckles v. C.I.R.*, 349 F.2d 610, 612–613 (10th Cir.1965); *Agar v. C.I.R.*, 290 F.2d 283, 284 (2d Cir.1961); *Villaume v. United States*, 616 F.Supp. 185, 187–188 (D.Minn.1985).

defendant's duty to withhold income and social security taxes. A payment of gross income may nonetheless not be subject to withholding if it does not constitute "wages" under the pertinent sections of the Internal Revenue Code. *Central Ill. Pub. Serv. Co. v. United States,* 435 *U.S.* 21, 25, 98 *S.Ct.* 917, 919, 55 *L.Ed.*2d 82, 86–87 (1978). *See also Rev.Rul.* 58–301 and 58–76.

The income tax withholding obligations of an employer are governed by 26 *U.S.C.A.* §§ 3401 and 3402. Section 3401(a) defines "wages" as "all remuneration ... for services performed by an employee for his employer...." Among the specific examples of "wages" described by the interpretive regulation, 26 *C.F.R.* § 31.3401(a)–1(b)(4), is:

> (4) *Dismissal payments.* Any payments made by an employer to an employee on account of dismissal, that is, involuntary separation from the service of the employer, constitute wages regardless of whether the employer is legally bound by contract, statute, or otherwise to make such payments.

The term "dismissal payments" has been interpreted by at least two courts to be the equivalent of severance pay. *See Driscoll v. Exxon Corp.,* 366 *F.Supp.* 992, 993 (S.D.N.Y.1973); *Cugini v. Com., Unemployment Compensation,* 511 *Pa.* 264, 270, 512 *A.*2d 1169, 1172 (1986). This interpretation is confirmed in *Rev.Rul.* 58–301, *Rev.Rul.* 74–252 and *Rev.Rul.* 75–44. *Revenue Ruling* 58–301 held:

> The lump-sum payment received by an employee as consideration for the cancellation of his employment contract constitutes gross income to the recipient in the taxable year of receipt. However, such amount does not constitute 'wages' for Federal employment and income tax withholding purposes.

As opposed to the payment for the cancellation of the intangible employment rights of a taxpayer in *Rev.Rul.* 58–301, the taxpayer in *Rev.Rul.* 74–252 was entitled to a specific six month payment at the termination of his contract. *Rev.Rul.* 74–252 determined that such six month salary payment was "in the nature of dismissal payments" and, therefore, wages for the purposes of F.I.C.A., FUTA and income tax withholding. The difference in the situations treated by the two rulings was that in the latter case the payments

were made pursuant to the provisions of the contract rather than as considera-
tion for the relinquishment of interest the employee had in his employment
contract in the nature of property.

Defendant urges that a later ruling, *Rev.Rul.* 75–44, is to the
contrary, and we do note a subtle change in emphasis that calls
the payment here into question. In that case it was determined
that a lump-sum payment for relinquishment of contractual
seniority and longevity rights was income subject to withhold-
ing. The Ruling reiterates the continued viability of *Rev.Rul.*
58–301, but apparently limits it to a situation where a fixed
term agreement is prematurely terminated as opposed to a
similar termination of "an employment contract which contem-
plated a relation between the parties that was to continue
indefinitely...." Of course, plaintiff's teaching contract was
of the latter variety. The revenue rulings in question do not,
however, treat the case of whether the termination of an
open-ended tenure arrangement combined with the settlement
of apparently viable tort claims would constitute wages subject
to withholding.

■ Were it not for the parties' agreement, *Rev.Rul.* 75–44
and the ambiguous nature of the payment would have raised an
issue of fact concerning the primary thrust of the settlement,
thus necessitating an evidential hearing. But the parties' ex-
press characterization of the payment precludes the determina-
tion sought by defendant here. Of course, if the character-
ization was plainly frivolous or a subterfuge to avoid proper
withholding, it would not be enforced. As noted above, how-
ever, the revenue rulings straddle the contentions of the par-
ties; each has an arguable claim. Therefore, when the parties
included in their agreement a provision that the payment was
"as settlement in lieu of litigation" and that the settlement sum
would "not constitute salary or wages for pension credit *or for
any other purpose,*" (emphasis added), defendant should not be
heard to claim that the payments were wages for withholding

tax and social security purposes.[2]  Where plaintiff's claim was reasonably arguable and the court provided for an indemnification agreement so that defendant was saved harmless in the event that the Internal Revenue Service claimed interest or penalty payments from defendant, the parties' agreement that the settlement sum would not constitute salary or wages for any purpose was properly enforced by the court.

Defendant's second point involved the jurisdiction of the Chancery Division to resolve a tax question.  Although the Federal District Courts "have original jurisdiction of all civil actions wherein the matter in controversy ... arises under the Constitution, laws, or treaties of the United States," 28 *U.S.C. A.* § 1331, and specifically "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue," 28 *U.S.C.A.* § 1340, this original jurisdiction is not exclusive.  *League to Save Lake Tahoe v. B.J.K. Corp.,* 547 *F.*2d 1072, 1075 n. 7 (9th Cir.1976); *see generally, Peper v. Princeton University Bd. of Trustees,* 77 *N.J.* 55, 74 (1978).

Defendant next claims that 26 *U.S.C.A.* § 3403 provides immunity from a suit such as that before us.  This section reads:

> The employer shall be liable for the payment of the tax required to be deducted and withheld under this chapter, and shall not be liable to any person for the amount of any such payment.

Defendant emphasizes the phrase "shall not be liable to any person for the amount of any such payment," yet overlooks the phrase "required to be deducted."  The issue here is whether

---

[2]Social Security withholding is governed by 26 *U.S.C.A.* § 3121 *et seq.,* with a definitional subsection defining "wages" as "remuneration for employment." Since the interpretive regulation, 26 *C.F.R.* § 31.3121(a)–1, does not address payments in settlement of potential claims, and the revenue rulings quoted earlier combine the discussion of the required withholding for both income tax and social security purposes, there is no reason to treat the subjects differently. *But see STA of Baltimore–ILA Container Royalty v. United States,* 621 *F.Supp.* 1567, 1575 (D.Md.1985), aff'd o.b. 804 *F.*2d 296 (4th Cir.1986) (stating that wages for social security purposes have been construed "more expansively" than wages for income-tax withholding purposes).

the payment was required to be deducted. If it was required, then plaintiff's claim, of course, is barred. If it was not required, then the statute has no applicability. Further, the purpose of this statute is not to defeat jurisdiction, it rather is to establish the principle that the payment of withholding tax is a separate obligation of the employer and, when discharged, the employee has no right to claim that such payment was an improper deduction from the full wages due and owing under any agreement.[3] *United States v. Crosland Const. Co.*, 217 F.2d 275, 277 (4th Cir.1954). Section 3403 both creates a new liability from the employer to the Federal Government and removes responsibility to the employee for such properly deducted sums. This section provides no immunity for claims for improper deductions for withholding tax purposes.

With regard to the interest ordered to be paid, although plaintiff was offered a reduced amount on two occasions, the offer was conditioned upon his permitting improper deductions. Plaintiff was not required to accept either offer. Defendant had the use of plaintiff's money for the interim period during which plaintiff was deprived of the sum. The award of interest, therefore, is compensatory, not punitive. *Busik v. Levine*, 63 N.J. 351, 358–359 (1973). The award of such interest is "largely dependent upon the application of principles of equity." *Manning Engineering, Inc. v. Hudson Cty. Park Commission*, 71 N.J. 145, 159 (1976), judgment vacated on other grounds, 74 N.J. 113 (1977). Interest is awardable against a governmental agency, although where it "is not provided for by statute, particular circumspection in the granting of interest is required." *Youth & Family Serv. Div. v. Middlesex Cty.*, 188 N.J.Super. 1, 5 (App.Div.1982); *Klein v.*

---

[3]*Compare N.J.S.A.* 34:11–4.2 which requires the payment to an employee of "the full amount of wages due," which obligation is discharged by an employer paying part to the employee and part to the Internal Revenue Service. A specific authorization for withholding federally required deductions is contained in *N.J.S.A.* 34:11–4.4(a).

*Hudson Cty.*, 187 *N.J.Super.* 603, 623–624 (Law.Div.1980), aff'd 187 *N.J.Super.* 433 (App.Div.), certif. den. 91 *N.J.* 533 (1982). In this case, Judge Huot, as did the judge in *Klein*, fully explained the reasons for the exercise of his discretion in awarding prejudgment interest. We will not interfere with his ruling.

Affirmed.